IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **ELBERT J. THACKER, individually and on behalf of a class of similarly situated individuals,**<br><br>Plaintiff,<br><br>v.<br><br>**PHH MORTGAGE CORPORATION,**<br><br>Defendant. | CIVIL ACTION NO.<br><br><u>**5:21-cv-00174-JPB (Bailey)**</u> |

FILED
NOV 1 4 2022
U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

## PROPOSED ORDER GRANTING MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARD AND MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT

Pending before the Court are Plaintiff's Unopposed Motion for Attorneys' Fees and Costs, and Service Award (ECF No. 50) as well as Plaintiff's Unopposed Motion for Final Approval of Settlement. For the reasons stated in the Plaintiff's memoranda and for good cause shown, the Motions are **GRANTED**. Accordingly, the Court hereby **FINDS, ORDERS, ADJUDGES, AND DECREES** as follows:

### I. Jurisdiction

The Court FINDS that it has personal jurisdiction over the Parties and all Settlement Class Members as well as subject matter jurisdiction to approve the Agreement, including all attached exhibits.

### II. Background

Plaintiff is pursuing the class action entitled *Elbert J. Thacker, individually and on behalf of a class of similarly-situated persons v. PHH Mortgage Corporation*, No. 5:21-cv-00174-JPB,

currently pending before the United States District Court for the Northern District of West Virginia (the "Court"). The Complaint asserted claims for violations of the West Virginia Consumer Credit Protection Act ("WVCCPA") and breach of contract based on the PHH Defendants' practice of charging Convenience Fees for borrowers' use of expedited online and telephonic payment methods.[1] Plaintiff filed the Action on September 1, 2021 in the Circuit Court of Marshall County, West Virginia (Doc. 1-1). For successful actions, the WVCCPA provides potential recovery of actual damages plus statutory damages of not greater than $1,000 per violation, plus a discretionary inflation adjustment from September 2015. West Virginia Code § 46A-5-101(1), -5-106. Thacker purported to assert the WVCCPA claims, as well as the breach of contract claims, on behalf of a putative class of similarly situated PHH borrowers with mortgaged property in West Virginia. After Thacker filed the Action in Circuit Court, PHH removed the Action to this Court (Doc. 1) and answered the Complaint (Doc. 4).

The Parties served initial disclosures and PHH responded to Plaintiff's initial set of discovery. (ECF Nos. 7, 8, 16-21.) Plaintiff then filed a motion for class certification. (ECF No. 30.) After Plaintiff filed his motion for class certification, the Parties decided to mediate the dispute and jointly moved to stay briefing on class certification pending mediation (Doc. 32). The Parties participated in a mediation session before mediator Stephen J. Dalesio on May 11, 2022. While the Parties did not reach a settlement agreement during that mediation, they continued informal settlement discussions over the next eight days. Through their arm's-length negotiations and mediation efforts, the Parties were able to reach an agreement on the principal terms of a potential settlement, subject to further negotiation of the remaining details. Only after agreeing on the

---

[1] For most of the period at issue in this action, PHH used Speedpay, Inc.'s "Speedpay™" service to facilitate these kinds of online and telephonic payment methods, so the Convenience Fees charged by PHH were often referred to as "Speedpay" fees.

principal terms of the potential settlement did the Parties discuss a potential Service Award to the class representative and attorneys' fees for Class Counsel. The only agreements made regarding those items were (1) that Plaintiff would seek a Service Award of up to $10,000, and (2) Class Counsel would seek an award of attorneys' fees from the District Court of up to thirty three percent (33%) of the Settlement Fund plus actual litigation expenses, both to be paid solely out of the Settlement Fund. PHH did not agree not to object and therefore remains free to object to those requests as it deems fit.

After finalizing the terms of their settlement and negotiating a Stipulation of Settlement and Release, Plaintiff moved for preliminary approval of the settlement on behalf of a proposed class. The Court granted Plaintiff's unopposed Motion for Preliminary Approval reflecting those proposed terms on August 16, 2022. (ECF No. 46).

### III.   The Settlement Merits Final Approval

**A.   Notice is Complete.**

The Court finds that the parties have completed all settlement notice obligations imposed in the Order on Motion for Preliminary Approval of Class Action Settlement and Scheduling Order. The class notice, which included first-class mailed notice to each class member, constitutes the "the best notice practicable under the circumstances," as required by Rule 23(c)(2). Further, the notice was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action, their right to object or exclude themselves from the Agreement and proposed Settlement, and to appear at the Fairness Hearing; was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court.

**B.     The Settlement is Fair, Adequate, and Reasonable.**

Settlement of class actions must be approved by the Court. Fed. R. Civ. P. 23(e); *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020); *Scardelletti v. Debarr*, 43 F. App'x 525, 528 (4th Cir. 2002); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991); *Domonoske*, 790 F. Supp. 2d at 472. "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158; *see also Groves*, 2011 WL 4382708, at *4.

Such approval typically involves a two-step process of "preliminary" and "final" approval. *See Manual for Complex Litigation* § 21.632, at 414 (4th ed. 2004); *Grice v. PNC Mortgage Corp. of Am.*, No. 97-3804, 1998 WL 350581, at *2 (D. Md. May 21, 1998) (endorsing Manual's two-step process); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1992). In the first stage, the Parties submit the proposed settlement to the Court for preliminary approval. In the second stage, following preliminary approval, the Class is notified and a fairness hearing scheduled at which the Court will determine whether to approve the settlement. *See Bicking v. Mitchell Rubenstein & Assocs.*, No. 3:11-cv-78, 2011 WL 5325674, at *4 (E.D. Va. Nov. 3, 2011) ("Prior to granting final approval, the court must direct reasonable notice to all potentially affected class members, allow time for objection, and provide a 'fairness hearing.'"). The Court has already granted preliminary approval. "When the court reviews a proposed class action settlement, it acts as a fiduciary for the class." *Lumber Liquidators*, 952 F.3d at 483-84, citing *Sharp Farms v. Speaks*, 917 F.3d 276, 293-94 (4th Cir. 2019).

At the preliminary approval stage, the Court considered and preliminarily approved the proposed settlement in light of Rule 23(e)(1)(B), which states that "[t]he court must direct notice

in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:

> (i) approve the proposal under Rule 23(e)(2); and
> (ii) certify the class for purposes of judgment on the proposal.

Consistent with this directive, the Court analyzes each factor set forth in Rule 23(e)(2), which states as follows:

> *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A) the class representatives and class counsel have adequately represented the class;
>> (B) the proposal was negotiated at arm's length;
>> (C) the relief provided for the class is adequate, taking into account:
>>> (i) the costs, risks, and delay of trial and appeal;
>>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>> (D) the proposal treats class members equitably relative to each other.

This settlement meets all these criteria for final approval, which overlap with the Fourth Circuit's multifactor standards for assessing whether a class action settlement is "fair, reasonable, and adequate" under Rule 23(e)(2). *Lumber Liquidators,* 952 F.3d at 484; *Scardelletti,* 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.,* 927 F.2d at 158. Under Rule 23(e)(2), "[t]he fairness analysis is intended primarily to ensure that a 'settlement is reached as a result of good-faith bargaining at arm's length, without collusion.'" *Berry v. Schulman,* 807 F.3d 600, 614 (4th Cir. 2015) (alteration omitted) (quoting *In re Jiffy Lube Sec. Litig.,* 927 F.2d at 159.

"[W]e have identified four factors for determining a settlement's fairness, which are: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had

been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of the class action litigation." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). The Court should be satisfied that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Samuel v. Equicredit Corp.*, No. 00-6196, 2002 WL 970396, at *1 n.1 (E.D. Pa. 2002); *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 U.S. Dist. LEXIS 25071, at *29-30. "Absent evidence to the contrary, the Court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Dijkstra v. Carenbauer,* No. 5:11-cv-00152, 2016 WL 6804980, at *2 (N.D. W.Va. July 12, 2016) (Bailey, J.), citing Newberg on Class Actions § 11.28 at 1159 (3d ed. 1992); *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 112 (S.D.N.Y. 1999) (the court must look at the negotiating process leading to settlement in order to ensure that "the compromise be the result of arms'-length negotiations and that plaintiff's counsel have possessed the ... ability ... necessary to effectively represent the class's interests.") (*citing Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1983)).

In determining the adequacy of the proposed settlement, the Court must consider the: (1) relative strength of Plaintiff's case on the merits; (2) existence of any difficulties of proof or strong defenses Plaintiff is likely to encounter if the case proceeds to trial; (3) anticipated duration and expense of additional litigation; (4) solvency of defendant and likelihood of recovery of a litigated judgment; and (5) degree of opposition to the settlement. *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Groves*, 2011 WL 4382708, at *5; *Loudermilk Servs., Inc.*, 2009 WL 72818, at *3.

Consideration of the applicable factors reveals that the Parties' proposed Settlement Agreement merits final approval. Class counsel and the class representative have adequately represented the class's interests and achieved an excellent result for the class. All class members will be efficiently paid in a matter of weeks within the Settlement's funding, and no class members have objected to the proposed attorney's fees and costs award.

The Parties' settlement was indeed the product of serious, informed, arm's-length, and non-collusive negotiations. Before settling this matter, the Parties seriously litigated this case at arm's-length. They exchanged informal discovery and participated in informal negotiations and mediation conducted by an experienced mediator. By the time the mediation occurred, Plaintiff's Counsel and Defendant's Counsel, who are both experienced in not only prosecuting complex class action claims such as these but specifically "Speedpay" litigation, had "a clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986).

The settlement has no obvious deficiencies and treats class members equitably. The intrinsic value of the net settlement payment to Class Members is readily apparent when one considers the risks inherent in continued and protracted litigation and the expense and delay that accompany the appeal process. The absence of any objections or opt outs after the notice period demonstrates the class's overwhelming approval of the settlement.

The settlement is particularly valuable to absent Class Members who, but for the settlement, likely would be unaware of the existence of their legal claims. Even if they were aware, given the relatively small amounts of money involved, absent class members and attorneys who may represent them may have little financial incentive to prosecute individual actions,

notwithstanding the potential availability of statutory damages and attorneys' fees were they to eventually prevail. The alternative to bringing this case as a class action is bringing hundreds of individual claims against Defendant. Realistically, absent this class action settlement, under the present circumstances it is unlikely that most absent class members would ever achieve any recovery.

"It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This is particularly true in class actions. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011); *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (quoting same); William B. Rubenstein, 4 *Newberg on Class Actions* § 13.44, n.1 (5th ed. Dec. 2019 Update) (collecting cases). The proposed settlement serves the overriding public interest in settling litigation. *Adkins,* 2022 WL 327739 at *3, citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). The complexity, expense, and duration of class action litigation are factors that mitigate in favor of approval of a settlement. *Nicholes v. Combined Ins. Co. of Am.*, No. 5:16-cv-10203, 2019 WL 2575066, at *3 (S.D. W.Va. Feb. 22, 2019). While the Parties could have litigated the case to judgment and taxed the resources of the litigants and the Court, they chose instead rationally and reasonably to forgo the expense and uncertainty of continued litigation and focus their efforts on achieving a fair and adequate settlement that took the risks of further litigation into account.

Finally, the "opinion of class action counsel, with substantial experience in litigation of similar size and scope, is an important consideration." *Cox,* 2019 WL 164814, at *3 citing *Muhammad*, 2008 WL 4382708, at *4. "'When the parties' attorneys are experienced and

knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.'" *Id.* at *4 (quoting *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000)). In the present case, appointed class counsel, who recommends the settlement, is skilled and experienced in consumer class actions and specifically in the litigation of Pay-to-Pay fees. *See e.g., Muhammad*, 2008 WL 5377783, at *4 (recognizing that Plaintiff's counsel, Jonathan Marshall of the law firm Bailey & Glasser, LLP is "skilled and experienced in class action litigation, and have served as class counsel in several cases, including consumer lending cases"); *Alig v. Quicken Loans Inc.*, No. 5:12-CV-114, 2016 WL 10489897, at *23 (N.D.W. Va. June 2, 2016) ("Jason Causey and the attorneys of Bordas & Bordas are experienced consumer class action litigators."). The Court finds that Plaintiff and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Agreement.

## IV.   The Requested Attorneys' Fees and Costs are Reasonable

Awarding attorneys' fees as a percentage of the benefit to the class is the preferable and prevailing method of determining fee awards in class actions that establish common funds for the benefit of the class. The requested award of $269,292.05, which represents 33% of the Common Fund, is reasonable under the circumstances of this case.

### A.   The Percentage of Fund Method is the Appropriate Measure for Determining Fees.

"The percentage-of-the-fund method, also known as the common fund doctrine, allows attorney's fees to be based on a percentage of the total recovery to the Plaintiff class." *Berry v. Wells Fargo & Co.*, No. 3:17-cv-00304, 2020 WL 9311859, at *11 (D.S.C. 2020), citing *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common fund doctrine is one of the earliest recognized exceptions to the "American Rule" which generally requires that litigants bear their own costs and attorneys' fees. Premised on the equitable powers of the court, the common

fund doctrine allows a person who maintains a suit that results in the creation, preservation or increase of a fund in which others have a common interest, to be reimbursed from that fund for the litigation expenses incurred. *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).

"Although the Fourth Circuit has not determined the preferred method for calculating attorney fees where the common fund has been generated on behalf of a class, nearly all circuits, as well as district courts within this Circuit, that have considered the issue have found that the trial court may use the percentage method." *Dijkstra v. Carenbauer,* No. 5:11-cv-152, 2015 WL 12750449, at *6 (N.D. W. Va. July 29, 2015); *see also Krakauer v. Dish Network, L.L.C.*, No. 1:14-cv-333, 2019 WL 7066834, at *4 (M.D.N.C. Dec. 23, 2019) ("district courts in the Fourth Circuit 'overwhelmingly' prefer the percentage method in common-fund cases"); *Good v. West Virginia-American Water Co.,* No. 14-1374, 2017 WL 2884535, at *20 (S.D. W. Va. July 6, 2017); *Kidrick v. ABC Television & Appliance Rental*, No. 3:97-cv-69, 1999 WL 1027050 *1 (N.D. W. Va. 1999) ("Where there is a common fund in a class settlement, application of a percentage method to calculate an attorney's fee award is now favored.") (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *Goldenberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998); *In re Thirteen Appeals Arising out of San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995); *In re Wash. Public Power Supply Sys. Litig.*, 19 F.3d at 1291, 1295 (9th Cir. 1994); *Gottlieb v. Barry*, 43 F.3d. 474 (10th Cir. 1994); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *Longden v. Sunderman*, 979 F.2d 1095, 1099 (5th Cir. 1992); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992); *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989); *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 454, 456 (10th Cir.), *cert. denied*, 488 U.S. 822 (1988); *Camden I Condo. Ass'n*, 946 F.2d 768, 773-774 (11th Cir. 1991); *Bebchick v. Wash. Met.*

*Area Transit Comm'n*, 805 F.2d 396, 406-7 (D.C. Cir. 1986). In fact, some circuits mandate use of the percentage of fund method. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993); *Camden I Condo. Ass'n,* 946 F.2d at 774; *see generally* 1 Alba Conte, *Attorney Fee Awards* § 2.02 at 31 (2d ed. 1993); *Court Awarded Attorney Fees, Report of the Third Circuit Task Force ("Task Force Report")*, 108 F.R.D. 237 (1985) (Prof. Arthur R. Miller, Reporter).

The percentage method "is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." *In re Prudential Ins. Co. Am. Sales Litig.,* 148 F.3d 283, 333 (3d Cir. 1998) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 821 (3d Cir. 1995)). Percentage-based attorney's fees:

> (1)   align the interests of claimants and lawyers by rewarding superior performance and punishing failure;
>
> (2)   minimize the need to evaluate the reasonableness of attorneys' efforts *ex post*, which is both time consuming and often hard to do; and
>
> (3)   transfer the burden of financing lawsuits and other risks from claimants to attorneys who are better able to bear them.
>
> In keeping with the larger point of this Report, Judge Easterbrook also maintained that because claimants use contingent percentage fees almost exclusively, judges should use them when awarding fees in claimant representations.

*Kirchoff v. Flynn*, 786 F.2d 320, 326 (7th Cir. 1986); *see also Muhammad*, 2008 WL 5377783, at *7.

In its 1985 report, the Third Circuit Task Force recommended that in the traditional common fund situation, a district court "should attempt to establish a percentage fee arrangement." *Task Force Report,* 108 F.R.D. 237, 255 (1985); *see also Muhammad*, 2008 WL 5377783, at *7. Since that time, the Third Circuit has, on several occasions, "reaffirmed that application of a percentage-of-recovery method is appropriate in common-fund cases." *In re Cendant Corporate PRIDES Litig.,* 243 F.3d 722 (3d Cir. 2001) (collecting cases).

11

In sum, there is a clear consensus among the federal and state courts, consistent with Supreme Court precedent, that the award of attorneys' fees in common fund cases should be based on a percentage of the recovery. This consensus derives from the recognition that the percentage of fund approach is the better-reasoned and more equitable method of determining attorneys' fees in such cases. *Muhammad*, 2008 WL 5377783, at *7.

**B.     The Percentage Requested by Class Counsel is Fully Supported by the Work Performed, Risks Taken, and Results Obtained.**

Both state and federal courts in West Virginia recognize the presumptive reasonableness of an attorneys' fee equal to one-third of a recovery. *Id.* As explained in *Eriksen Const. Co., Inc. v. Morey*, 923 F. Supp. 878, 881 (S.D. W. Va. 1996):

> The Court notes a one-third contingency fee is presumptively reasonable in West Virginia. *See Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73, 80 (1986). Nevertheless, a forty percent (40%) contingency fee is a common fee contract provision for cases that proceed to trial.

*Id.*; *see also F.S.&P. Coal Co. v. Inter-Mountain Coals, Inc.*, 179 W. Va. 190, 366 S.E.2d 638 (1988) (a one-third attorneys fee is the "going rate" in contingency fee cases). This authority supports the requested award in this case.

Some courts also consider certain factors in analyzing the reasonableness of fees determined by the percentage of recovery method. *Muhammad*, 2008 WL 5377783, at *8. These factors can include:

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Cendant*, 243 F.3d at 733 (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)) (citations omitted); *see also Muhammad*, 2008 WL 5377783, at *8. The *Gunter* Court

12

instructed that there is no specific formula for analyzing these factors. "Each case is different, and in certain cases, one factor may outweigh the rest." *Gunter*, 223 F.3d at 195 n.1.

All of these considerations warrant an award of the requested fees in this case. The fund established for Class Members is substantial in light of the size of the class. Judging by the fact that no Class Member has opted out of or objected to the proposed Settlement, the Class Members overwhelmingly support the settlement. Additionally, class counsel are skilled and experienced in class action litigation, have served as class counsel in dozens of cases, and were particularly qualified to litigate this case. Bailey Glasser attorneys were appointed as lead class counsel in one of the first filed class action lawsuits in the country to challenge Speedpay fees, *Montesi v. Seterus, Inc.*, Case No. 50-2015-CA-010910-XXXX-MB (Fla. Cir. Ct. Palm Beach Cty.). *Montesi* was heavily litigated and the trial court certified a class of Florida borrowers over the defendant's opposition. It resulted in a seven-figure settlement, one of the first of its kind, and refunded a substantial amount of the fees collected by the defendant to the class of borrowers.

Bailey Glasser has acted as lead counsel in over a dozen cases involving Speedpay Fees across the country and is at the forefront of that litigation. In the course of their representation, Bailey Glasser attorneys have obtained contested class certification twice, in the matters, *Torliatt v. Ocwen Loan Servicing, LLC et. al,* No. 3:19-cv-04303-WHO (N.D. Cal.) and in *Williams v. Lakeview Loan Servicing, LLC et al.*, Case No 4:20cv-01900 (S.D. Tex.). Each of these cases involved intensive briefing before both at the trial and appellate courts on both the merits of the claims and the issues surrounding class certification.

During the course of their representation, Bailey Glasser attorneys have negotiated substantial recoveries for the classes they represent specifically in litigation challenging Speedpay fees. These matters include settlements that district courts have granted final approval including

*Caldwell v. Freedom Mortgage Corp.*, No. 3:19-cv-02193-N (N.D. Tex.); *Elbert v. Roundpoint Mortgage Servicing, Corp.*, No. 3:20-cv-00250-MMC (N.D. Cal.); *Fernandez v. Rushmore Loan Servicing*, Case No. 8:21-cv-00621-DOC (C.D. Cal.); *Lembeck v. Arvest Central Mortgage Co.*, No. 3:20-cv-03277-VC (N.D. Cal.); *Phillips v. Caliber Home Loans*, No. 0:19-cv-02711 (D. Minn.); *Pierce v. Statebridge Co.*, No.1:20-cv-117 (M.D.N.C.); *Silveira v. M&T Bank*, No. 2:19-cv-06958-ODW (C.D. Cal.); and *Langston v. Gateway Mortgage*, 5:20-CV-01902 (C.D. CAL.). There are also additional pending settlements where Bailey Glasser attorneys represent the conditionally certified classes that district courts have granted preliminary approval and final approval is pending, including *Alexander v. Carrington Mortgage Services, LLC*, Case No. 1:20-cv-2369-TEB (D. Md.); *Wilson v. Santander Consumer USA, Inc.*, Case No. 4:20-CV-00152 (E.D. Ark.); *Vannest v. Nationstar Mortgage, LLC*, 5:21-cv-00086 (N.D. W.Va.); *Torliatt v. Ocwen Loan Servicing, LLC et. al*, No. 3:19-cv-04303-WHO (N.D. Cal.); *Six v. Loancare, LLC*, 5:21-cv-00451 (S.D. W.Va.); *Cox v. New Rez, LLC d/b/a Shellpoint Mortgage Serv.*, 3:20-cv-00859 (S.D. W.Va.). Bordas and Bordas also serves as class counsel in the *Six* and *Vannest* matters.

Each of these cases involved contested litigation over the merits of the claims and settlements that were informed by several district court rulings and appellate court opinions. For example, in *Alexander*, the trial court initially dismissed all claims, but on appeal, the Fourth Circuit reversed the dismissal and interpreted the FDCPA and Maryland statute to disallow convenience fees that are not expressly authorized by the borrowers' mortgage agreements. *See Alexander v. Carrington Mortg. Services*, LLC, 23 F.4th 370, 372 (4th Cir. 2022). Accordingly, class counsel have brought a wealth of experience and knowledge of these claims to this matter, which helped streamline the negotiation process and limit the contestation on the merits in the course of this litigation.

The case involved complex issues related to Defendant's policies and application of state consumer protection law. Considering the possibility of appeals, resolution of the litigation could have taken years, and counsel bore a risk of nonpayment. The outcome of the case was hardly a foregone conclusion, but nonetheless class counsel accepted representation of the Plaintiff and the class on a contingent fee basis, fronting the costs of litigation. "In so doing, counsel have achieved a quite satisfactory settlement result." *Adkins v. Midland Credit Mgmt., Inc.*, No. 5:17-cv-04107, 2022 WL 327739, at *6 (S.D. W.Va. Feb. 3, 2022), quoting *Muhammad*, 2008 WL 5377783, at *8.

Finally, the 33%, for a total of $269,292.05, requested by counsel is consistent with fee awards in similar common-fund cases. *See Adkins,* 2022 WL 327739, at *7 (awarding one-third of CCPA settlement); *Cox v. BB&T*, No. 5:17-cv-01982, 2019 WL 164814, at **5-6 (S.D. W. Va. Jan. 10, 2019) (awarding one-third of CCPA settlement); *Dijkstra*, 2015 WL 12750449, at *7 (awarding one-third of settlement in CCPA settlement); *Archbold*, 2015 WL 4276295, at *6 (same); *Muhammad*, 2008 WL 5377783, at *8 (same); *Triplett v. Nationstar Mortgage, LLC*, No. 3:11-cv-238 (S.D. W. Va. 2012) (same); *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 WL 2285972 (S.D. W.Va. May 23, 2013) (awarding one-third in settlement involving pension and insurance claims); *Hackworth v. Telespectrum Worldwide, Inc.*, No. 3:04-cv-1271 (S.D. W. Va. 2004) (awarding fees of one-third amount of settlement in WARN Act class action settlement).

Accordingly, consideration of all of these factors overwhelmingly supports the requested award of 33% of the amount of the common fund established for the Class, for a total of $269,292,05.

15

## V.  The Requested Expenses are Reasonable

Consistent with the terms of the Agreement, the WVCCPA's fee-shifting provision entitles a consumer to recover "all or a portion of the costs of litigation" which includes not only "reasonable attorney fees" but "court costs and fees." W. Va. Code § 46A-5-104. West Virginia courts therefore award costs separately from attorney fees to prevailing plaintiffs in WVCCPA actions. *See Muhammad*, 2008 WL 5377783 at *9; *Quicken Loans, Inc. v. Brown*, 737 S.E.2d 640, 664 (W. Va. 2012).

As set forth in the declaration of Jonathan Marshall, Class Counsel have incurred $890.15 in reasonable litigation expenses. These costs were incurred for filing fees, legal research, and photocopies.

## VI.  The Proposed Service Award Is Justified and Appropriate

Incentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest. *Adkins v. Midland Credit Mgmt., Inc.*, No. 5:17-cv-04107, 2022 WL 327739, at *6 (S.D. W.Va. Feb. 3, 2022), citing *Archbold*, 2015 WL 4276295, at *6. Courts around the country have allowed such awards to named plaintiffs or class representatives. *See, e.g., Adkins*, 2022 WL 327739, at *7 (awarding each class representative $10,000 out of $995,000 fund); *Dijkstra*, 2015 WL 12750449, at *6 (awarding $10,000 to sole class representative); *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-CV-00361, 2018 WL 2382091, at *5 (E.D. Va. Apr. 18, 2018) (awarding $300,000 to class representatives out of $94 million fund); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 480 (D.N.J. 2008) (awarding $60,000 to each class representative out of $215 million fund); *Worthington v. CDW Corp.*, No. C-1-03-649, 2006 WL 8411650, at *7 (S.D. Ohio May 22, 2006) (awarding $70,000 to class representatives out of $1.45 million fund); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F.Supp.2d 322, 342 (E.D. Pa. 2007) (awarding $75,000 to class representative out of $39.75

million fund); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357-58 (N.D. Ga. 1993) (awarding $142,500 to class representatives out of $50 million fund); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (awarding $215,000 to several class representatives out of an $18 million fund); *see also Irvine v. Destination Wild Dunes Mgmt., Inc.*, 204 F. Supp. 3d 846, 851 (D.S.C. 2016) (awarding $30,000 to class representatives independent from $179,000 fund). One district court has gone so far as to say that incentive awards are "routinely approve[d]." *Id.,* citing *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). The purpose of such awards is to encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook. *Id.,* citing *Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *25; *Varcallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005).

Class members would have received nothing had Mr. Thacker not been willing to step up and file this action. Plaintiff gave his time and effort to prosecute the case. He participated in mediation as well as meetings with counsel and counsel's staff. He consulted with counsel regarding critical aspects of the settlement. He made himself available to counsel whenever he was needed and stood willing to do whatever tasks would be asked of him as the case progressed. Accordingly, the proposed service award is justified and appropriate. *See Adkins*, 2022 WL 327739, at *7; *Cox,* 2019 WL 164814, at *6; *Archbold*, 2015 WL 4276295, at *6.

### VII. Conclusion

In accordance with the foregoing analysis, the Court **ORDERS** as follows:

(1) Plaintiff and Class Representative Elbert J. Thacker is awarded a service award of $10,000 in recognition of his service to the class;

(2) Class Counsel are awarded their attorneys' fees from the settlement fund in the amount of $269,292.05, which represents 33% of the settlement fund;

(3) Class Counsel are awarded their litigation expenses from the settlement fund in the amount of $890.15;

(4) The Agreement and the proposed Settlement are approved as fair, reasonable and adequate as to, and in the best interests of, the Settlement Class Members, and the Parties and their counsel are directed to implement and consummate the Agreement according to its terms and provisions;

(5) The Agreement is binding upon, and shall have res judicata and collateral estoppel effect in all pending and future lawsuits or other proceedings maintained by or on behalf of, Plaintiff and the Settlement Class Members;

(6) The Class Notice implemented pursuant to the Agreement (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action, their right to object or exclude themselves from the Agreement and proposed Settlement; and to appear at the Fairness Hearing; (c) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice; and (d) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court;(8) The Release set forth in Section 3 of the Agreement is incorporated herein and made effective as of the Final Settlement Date and the Released Persons are forever discharged as set forth in the Agreement;

(7) Settlement Class Members are permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any

18

lawsuit or other action in any jurisdiction based on the Released Claims;

(8) The Parties are authorized without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Agreement and its implementing documents (including all exhibits to this Agreement) if such changes are not materially inconsistent with the Court's Final Order and Judgment or do not materially limit, or materially and adversely affect, the rights or obligations of the Settlement Class Members under the Agreement;

(9) The Court retains continuing and exclusive jurisdiction over all matters relating to the Settlement or the consummation of the Settlement; the validation of the Settlement; the construction and enforcement of the Settlement and any orders entered pursuant thereto; and all other matters pertaining to the Settlement or its implementation and enforcement;

(10) The Action is dismissed on the merits and with prejudice (including all individual claims and class action claims presented thereby) and shall be final and entered forthwith, without fees or costs to any Person or Party except as provided in this Agreement; and

(11) Without affecting the finality of the Final Order and Judgment for purposes of appeal, the Court retains jurisdiction as to the administration, consummation, enforcement and interpretation of the Agreement and the Final Order and Judgment, and for any other necessary purpose.

The Clerk is requested to forward a copy of this written Opinion and Order to all counsel of record.

Entered: November 14, 2022

The Honorable John Preston Bailey
United States District Judge

19